IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. 3:03-CR-370-L (1) |
| | § | |
| JAMES LEE McELHANEY | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Notice of Intention to Withdraw Plea of Guilty, filed August 17, 2005.[1] Upon careful consideration of the motion, response, reply, the hearing, and the applicable law, the court **denies** Defendant's Notice of Intention to Withdraw Plea of Guilty.

### I.   Factual and Procedural Background

On October 22, 2003, a grand jury returned a fifteen-count indictment charging Defendant James Lee McElhaney ("Defendant" or "McElhaney") and William Whisenant with mail fraud, wire fraud, money laundering, and illegal money transactions. McElhaney was the Vice President of Acquisition and Development of Triad Hospitals, Inc ("Triad"). On November 3, 2003, McElhaney was arraigned and entered a plea of not guilty on all fifteen counts. A fifteen-count superseding indictment was returned on January 21, 2004. On August 19, 2004, McElhaney and the United States of America ("Government") executed a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A) whereby McElhaney agreed to plead guilty to Count 5 of the superseding indictment upon the condition that he and his wife would not be prosecuted for filing false tax returns. That same day, the parties executed a factual resume, stipulating to the following facts:

---

[1] Defendant filed a document entitled "Notice of Intention to Withdraw Plea of Guilty." The court treats this document as a motion to withdraw plea of guilty.

**Memorandum Opinion and Order - Page 1**

> From May 1998 through January 2002, defendant James L. McElhaney, who was the Vice President of Acquisition and Development of [Triad], engaged in a scheme to defraud Triad by inserting fictitious fees and costs in [a] real estate transaction which benefited him personally.
>
> During late 1999 and early 2000, Triad was seeking to purchase a parcel of land in Sherman, Texas, on which Triad could buil[d] a medical facility. An agreement was reached with an individual to purchase approximately 47 acres of undeveloped land in Sherman, Texas, for approximately $1.2 million. Defendant McElhaney and co-defendant William D. Whisenant devised a plan to defraud Triad by structuring the purchase and acquisition through a "landflip" involving a "strawman" intermediary whereby they fraudulently added approximately $750,000 into the cost of the property of which they paid $50,000 to the "strawman" and divided the rest between themselves.
>
> On July 27, 2000, McElhaney caused Triad to wire [transfer] $1,957,070.30, from its account at Wachovia Bank, in Charlotte, North Carolina, to an account of First Fidelity Title at Bank of Texas, N.A., Dallas, Texas, to fund and close the Sherman Hospital land acquisition, which included the approximately $750,000 that McElhaney and Whisenant had fraudulently inserted into the price of the property.

Factual Resume at 1-2.

On September 2, 2004, McElhaney was rearraigned before a United States magistrate judge. The magistrate judge informed McElhaney that he was under oath and could be charged with perjury for answering a question falsely. McElhaney was instructed that, should he decide to plead guilty, his plea cannot be induced by any threat or coercion, but must be purely voluntary and made only because "you are guilty and for no other reason." Transcript of Rearraignment at 8. Upon receiving these instructions, McElhaney pleaded guilty to Count 5 of the superseding indictment pursuant to the written plea agreement and in the presence of his private counsel, Mr. Jay Ethington and Mr. Michael Gibson. The magistrate judge recommended that the court accept his guilty plea and that he be sentenced accordingly. Following rearraignment, McElhaney and his attorneys signed a notice regarding entry of guilty plea. The magistrate judge then issued a Report and Recommendation

Concerning Plea of Guilty, notifying that he had 10 days to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B). McElhaney did not object.

On September 30, 2004, the court issued its Order Accepting Report and Recommendation of the United States Magistrate Judge Concerning Plea of Guilty. After the court granted three sentencing extensions, McElhaney filed his Motion and Brief to Dismiss Indictment on July 6, 2005, nine months after pleading guilty.[2] Six weeks later, on August 17, 2005, he filed his Notice of Intention to Withdraw Plea of Guilty. After "careful reconsideration," McElhaney now asserts his innocence to Count 5 of the superseding indictment and requests the court to withdraw his plea of guilty and place the case on the trial docket. Def.'s Notice of Intention to Withdraw Plea of Guilty at 2. He contends that, because he was a licensed real estate broker representing Triad at the time he committed the conduct forming the basis of Count 5, such conduct was authorized by 22 Tex. Admin. Code § 535.148, a Texas Real Estate Commission rule titled "Receiving an Undisclosed Commission of Rebate." The relevant portion of the rule is set forth below:

> (a) A licensee may not receive a commission, rebate, or fee in a transaction from a person other than the person the licensee represents without first disclosing to the licensee's client that the licensee intends to receive the commission, rebate, or fee, and obtaining the consent of the licensee's client. *This subsection does not apply to referral fees paid by one licensed real estate broker or salesperson to another licensed broker or salesperson.*

22 Tex. Admin. Code § 535.148(a) (2005) (emphasis added). McElhaney maintains that, in spite of his guilty plea, he has always believed that he did not violate a federal criminal statute.

---

[2] For reasons stated on record in open court at the hearing regarding Defendant's Motion to Dismiss Indictment and Motion to Withdraw Plea of Guilty held on September 26, 2005, the court denied Defendant's Motion to Dismiss Indictment. *See* Tr. of Mot. to Dismiss Indictment and Mot. to Withdraw Plea of Guilty Hr'g, 3:03-CR-370-L (1) at 39-40. On these same grounds, the court granted the Motion to Quash Subpoenas filed by Donald P. Fay and Kevin McGinnis, which the Government joined. To memorialize, the court's findings at the hearing are incorporated by reference as if repeated herein verbatim.

**Memorandum Opinion and Order - Page 3**

In his Notice of Intention to Withdraw Plea of Guilty, McElhaney makes numerous contentions purporting to show a "fair and just reason" for withdrawal pursuant to *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985). The Government filed its Response to Defendant's Notice of Intention to Withdraw Plea of Guilty on August 29, 2005. It contends that McElhaney cannot demonstrate a fair and just reason for withdrawing his guilty plea, arguing that all 7 factors set forth in *Carr* cut against him. It further asserts that McElhaney offers mere conclusory allegations of innocence and therefore cannot provide the evidence necessary for the court to grant a withdrawal.

On September 26, 2005, the court held a hearing regarding McElhaney's Motion to Dismiss Indictment and Notice of Intention to Withdraw Plea of Guilty ("hearing"). At the hearing, the court denied the Motion to Dismiss Indictment.[3]

## II.     **Withdrawal of Plea of Guilty Standard**

Prior to sentencing, the court may use its discretion to grant a motion to withdraw a guilty plea if the defendant presents a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). There is no absolute right to withdraw a guilty plea, and the defendant bears the burden of establishing a fair and just reason for withdraw. *United States v. Brewster*, 137 F.3d 853, 857-58 (5th Cir. 1998). When ruling on the motion, the court should consider whether: (1) the defendant asserted his innocence; (2) withdrawal would prejudice the government; (3) the defendant delayed in filing the withdrawal

---

[3]When the court denied McElhaney's Motion to Dismiss, it stated its reasons for rejecting his contention that Count 5 should be dismissed because § 535.148 permitted him to accept undisclosed referral fees from other licensed brokers. *See* Hr'g Tr. at 39-40. The court now rejects McElhaney's argument that he performed no illegal act by committing the conduct underlying Count 5, to which he pleaded guilty. The conduct forming the basis of Count 5 involves obtaining money by means of a fraudulent transaction; such conduct clearly surpasses the mere receipt of undisclosed referral fees. *See* Superseding Indictment at 12.

**Memorandum Opinion and Order - Page 4**

motion; (4) withdrawal would inconvenience the court; (5) adequate assistance of counsel was available; (6) the plea was knowing and voluntary; and (7) withdrawal would waste judicial resources. *United States v. Mendoza-Mata*, 322 F.3d 829, 834 (5th Cir. 2003) (citing *Carr*, 740 F.2d at 343-44).

The court need not make a finding as to each *Carr* factor, as it makes its determination based on the totality of the circumstances. *United States* v. *Powell*, 354 F.3d 362, 370-71 (5th Cir. 2003); *Brewster*, 137 F.3d at 858. Moreover, a defendant's assertion of conclusory allegations do not warrant withdrawal of a plea of guilty, at least where such allegations are clearly refuted by the record. *United States v. Bounds*, 943 F.2d 541, 543 (5th Cir. 1991).

### III.  Analysis

The court has considered all seven *Carr* factors and determines, based on a totality of the circumstances, that McElhaney fails to show a fair and just reason why his guilty plea should be withdrawn. Although the court need not make specific findings in denying McElhaney's motion, it addresses each factor below.

**A.  Knowing and Voluntary**

McElhaney contends that the guilty plea he entered at rearraignment was not knowing and voluntary. For a plea to be knowing and voluntary, a "defendant must be advised of and understand the consequences of the [guilty] plea." *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992) (citing *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)). The consequences of a guilty plea, with respect to sentencing, "mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990) (citations and quotations omitted).

**Memorandum Opinion and Order - Page 5**

The court determines that McElhaney was aware of the consequences of his plea. The plea agreement he signed correctly states the maximum statutory term of imprisonment and fine.[4] *See* Plea Agreement at 2. Prior to accepting a plea, the magistrate judge informed McElhaney about these statutory maximums. Thereafter, McElhaney acknowledged that he realized the possible punishment entailed if he entered a plea of guilty. He also stated that he understood the essential elements of wire fraud in violation of 18 U.S.C. § 1343, and then admitted to committing each. In addition, he averred that the facts set forth in the factual resume were true. Finally, McElhaney confirmed his understanding that, by pleading guilty, he would be adjudged guilty of Count 5 and waive his right to appeal or otherwise challenge his sentence. McElhaney made the above concessions in open court, and each carries a strong presumption of verity. *See Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977); *Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).

McElhaney also asserts that he pleaded under duress, stating that the Government threatened to prosecute his wife for unrelated tax issues if he did not plead guilty. McElhaney testified before the magistrate judge, however, that his plea was not the product of threats or coercion. He now avers that he agreed to plead guilty "to insure his family's safety," and, as a consequence, signed a factual resume that was "untrue" and admitted to the magistrate judge that everything the Government said was true even though "he knew it was not." Def.'s Notice of Intention to Withdraw Plea of Guilty at 4-5. The Government denies that it improperly coerced McElhaney's plea, contending that it made only good faith representations supported by probable cause. It also

---

[4]Five years is the correct maximum term of imprisonment, since the conduct underlying Count 5 of the superseding indictment occurred on or about July 27, 2000. Such conduct preceded the 2002 amendment to 18 U.S.C. § 1343, which increased the maximum term of imprisonment for an ordinary violation from 5 years to 20 years. *See* 18 U.S.C. § 1343. In addition, $250,000, or twice any pecuniary gain to the defendant or loss to the victims, is the correct maximum fine. *See* 18 U.S.C. § 3571(b), (d).

**Memorandum Opinion and Order - Page 6**

contends that, even if it indeed threatened to prosecute McElhaney's wife, such threat does not affect the voluntariness of his guilty plea.

To withdraw his guilty plea based on involuntariness, McElhaney must show that his plea was "so much the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge*, 431 U.S. at 75; *United States v. Diaz*, 733 F.2d 371, 374 (5th Cir. 1984). Guilty pleas made in consideration of lenient treatment for a third person pose a greater danger of coercion than purely bilateral plea bargaining. *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979). A threat by the Government to prosecute a third party family member, however, is not itself legally impermissible. *Diaz*, 733 F.2d at 374.[5] Prosecutors who use this technique must observe a high standard of good faith. *Nuckols*, 606 F.2d at 569. Such good faith is established when the prosecutor has probable cause to bring charges. *Id.*; *Diaz*, 733 F.2d at 374.

At the hearing, McElhaney testified that his former attorney, Mike Gibson ("Gibson"), informed him that the Government would prosecute him and his wife for tax matters unless he agreed to plead guilty to Count 5. Gibson then testified, pursuant to the court's oral order, stating that the Government disclosed that it had opened a separate tax fraud investigation against McElhaney, but at no time threatened to prosecute McElhaney's wife if he did not plead guilty.[6]

---

[5] *See also Nuckols*, 606 F.2d at 569 ("It is generally within a prosecutor's discretion merely to inform an accused that an implicated third person will be brought to the book if the accused does not plead guilty . . . if an accused elects to sacrifice himself for such motives, that is his choice.") (internal quotations omitted).

[6] The court determined that, by making selective disclosures in his briefing and testimony, McElhaney waived the attorney-client privilege as to communications between him and Gibson underlying the subject matter found on the second and third pages of the Affidavit of James Lee McElhaney, attached to the Notice of Intention to Withdraw Plea of Guilty. *See* Hr'g Tr. at 112-14; *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 206 n.19 (5th Cir. 1999); *United States v. Woodall*, 438 F.2d 1317, 1324 (5th Cir. 1971) (holding "a client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter . . . ."). The court also observed the testimony and demeanor of McElhaney and Gibson. In evaluating their testimony and demeanor, the court

Case 3:03-cr-00370-L   Document 130   Filed 11/17/05   Page 8 of 13   PageID 595

Gibson explained that, upon learning this information, he demanded that a provision be included in any plea agreement exonerating McElhaney and his wife, a jointly filing spouse, from tax fraud prosecution. The resulting plea agreement states the following:

> **9. Government's agreement:** The government will not bring any additional charges against defendant based upon the conduct underlying and related to defendant's plea of guilty. The government will dismiss, at sentencing, the remaining counts in the pending indictment. *This will include possible prosecution of him, or his jointly filing spouse, for filing false tax returns with the Internal Revenue Service if defendant complies with ¶ 8, above.*

Plea Agreement ¶ 9. The court notes that this condition does not solely benefit McElhaney's wife; it also benefits McElhaney. Likewise, Gibson testified that the type of plea negotiation the parties conducted "is done a lot." Hr'g Tr. at 138. In addition, it is undisputed that the Government made no direct threat and also had no representatives present when McElhaney signed the agreement. Clearly, this type of plea bargaining does not render a guilty plea involuntary. *See Diaz*, 733 F.2d at 375. Indeed, the record indicates that McElhaney pleaded guilty in order to obtain the exact benefit of the bargain he received. *See id.*

Moreover, even if the court were to assume that the Government actually threatened to prosecute McElhaney's wife, the record is devoid of evidence demonstrating that the Government had a bad faith basis for making such threat. In fact, the record suggests the opposite. An Internal Revenue Service agent who was assigned to the investigation testified that evidence indicated tax fraud may have taken place concerning the tax returns for McElhaney and his wife in the years 1998 through 2002. Likewise, Leonard Senerote ("Senerote"), the former prosecutor on the case, described the factual basis for the tax fraud investigation. Gibson also testified that he believed the factual assertions underlying the Government's disclosure were true. In light of such testimony, the

---

finds Gibson's testimony to be more credible than McElhaney's.

court determines that the Government had a good faith basis for opening its tax fraud investigation and, moreover, acted well within its discretion by making its disclosure. *See Nuckols*, 606 F.2d at 569. Accordingly, to whatever extent McElhaney may have pleaded guilty solely to extricate his wife from possible tax fraud prosecution, his plea is still voluntary.[7] *See United States v. Clark*, 917 F.2d 177, 180 (5th Cir. 1990); *Diaz*, 733 F.2d at 374. In any event, McElhaney fails to carry his heavy burden of showing his plea was involuntary.

### B. Delay and Assertion of Innocence

McElhaney asserts that he did not delay in filing his motion to withdraw, contending his re-evaluation process required many months to accomplish. The Government counters, insisting that McElhaney's filing was untimely, citing the eleven months that passed between his plea of guilty on September 2, 2004, and his Notice of Intention to Withdraw Plea of Guilty, filed August 17, 2005. The court agrees with the Government that McElhaney's motion to withdraw is untimely.

McElhaney asserted his innocence for the first time in his Motion to Dismiss Indictment, filed July 6, 2005, nine months after pleading guilty. He then waited an additional six weeks before filing his Notice of Intention to Withdraw Plea of Guilty. Both motions were filed after the United States Probation Office filed its Presentence Report ("PSR") on November 22, 2004. At the hearing, the court learned that McElhaney first discussed his desire to withdraw his guilty plea with his attorneys on November 4, 2004, some two months after pleading guilty. Further, it learned that the first effort to draft a motion to withdraw began in early March, 2005, six months after the guilty plea.

---

[7] The court also finds it hard to fathom that McElhaney entered a guilty plea to protect his wife and family, but now seeks to withdraw his guilty plea, which would have the effect of re-exposing his wife to potential criminal liability.

**Memorandum Opinion and Order - Page 9**

The "rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered." *Carr*, 740 F.3d at 345 (citing *Everett v. United States*, 336 F.2d 979, 984 (D.C. Cir. 1964)).  The purpose is not to enable a defendant "to make a *tactical decision* to enter a plea, *wait several weeks*, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."  *Id*. (emphasis added).  The court in *Carr* found defendant's motion to withdraw to be "not promptly filed" where defendant filed the motion 22 days after entering his guilty plea.  *See Carr*, 740 F.2d at 345.  Moreover, the court in *Brewster* denied defendant's motion to withdraw his plea of guilty where defendant sought to withdraw three months after his plea.  *See Brewster*, 137 F.3d at 858.  McElhaney waited eleven months.  He is prohibited from filing a motion to withdraw as a tactical decision to quell any sensation of buyer's remorse.  *See Carr*, 740 F.3d at 345.[8]

### C.  Prejudice to the Government

McElhaney also contends that withdrawal of the plea will not prejudice the Government nor place it in a position for which it is unprepared.  The Government counters, asserting that McElhaney filed his motion to withdraw immediately after learning that co-indictee William Whisenant, who was likely to testify against him had trial been necessary, had suffered a severe heart attack and remained unconscious.  Accordingly,  the Government contends it would suffer substantial prejudice were McElhaney allowed to withdraw his guilty, since he learned that, had he pleaded not-guilty,  a key witness would likely be unavailable to testify against him at trial.  The court agrees.

---

[8]*See also United States v. Hyde*, 520 U.S. 670, 677 (1997) (stating "[w]ere withdrawal automatic in every case where the defendant decided to alter his tactics . . . the guilty plea would become a mere gesture, a temporary and meaningless formality at the defendant's whim") (internal citations omitted).

**Memorandum Opinion and Order - Page 10**

At the hearing, the court learned that Whisenant suffered a massive heart attack on August 6, 2005 and became comatose.[9]  McElhaney testified that he visited the hospital and learned of Whisenant's condition "a matter of days" before filing his Notice of Intention to Withdraw Plea of Guilty.  Hr'g Tr. at 97.  It is undisputed that Whisenant pleaded guilty to Count 5 on January 26, 2004, and that part of his plea agreement required him to cooperate with the Government in its case against McElhaney.  The court will not grant McElhaney a withdrawal, seeing that he waited eleven months to file a motion, and such motion came only days after he discovered Whisenant's condition.  Accordingly, the court finds that the Government would suffer prejudice were McElhaney allowed to withdraw his guilty plea.

**D.  Inconvenience to the Court and Waste of Judicial Resources**

McElhaney contends that withdrawal will not inconvenience the court, and that any inconvenience the court faces is minimal and outweighed by Defendant's constitutional right to trial.  *Id*.  The court disagrees.  McElhaney has no absolute right to withdraw his guilty plea.  *See Brewster*, 137 F.3d at 857.  The court has already consumed scarce judicial resources in deciding McElhaney's Motion to Dismiss Indictment as well as this motion.  Is it axiomatic that additional time would be expended if the court were to allow McElhaney to withdraw his guilty plea and proceed to trial.  McElhaney has avoided sentencing for fourteen months; this needs to come to an end.  The court does not take this factor lightly, as it will spend whatever time is necessary to further the ends of justice; however, after a thorough and exhaustive review of the record and applicable authority, the court is convinced that this motion borders on being frivolous.  Accordingly, the court

---

[9]Whisenant remained comatose as of September 26, 2005, the date of the hearing.  On October 31, 2005, the court dismissed the indictment returned against Whisenant upon receiving confirmation that he expired the week of October 17, 2005.

**Memorandum Opinion and Order - Page 11**

should not expend further time beyond what is necessary to conduct a sentencing hearing and matters associated with such sentencing.

### E.  Availability of Adequate Assistance of Counsel

McElhaney finally contends that his reliance upon the advice provided by his counsel resulted in a detrimental misunderstanding of plea proceedings and ramifications. Specifically, he asserts that Gibson and Mr. Ethington ("Ethington") did not have a full comprehension of real estate principles and regulations, which resulted in an inadequate evaluation of law and facts.

McElhaney's contention is contradicted by the record, which indicates that his counsel was highly active in protecting his rights. *See Lampazianie*, 251 F.3d at 525. Gibson testified that he informed McElhaney that an argument contending the money at issue was legally acquired through undisclosed referral fees had little or no chance of prevailing in light of the breadth of Count 5 and other charges. Both Messrs. Gibson and Ethington represented McElhaney during plea negotiations, and they successfully added to the plea agreement a condition exonerating McElhaney and his jointly filing spouse from tax fraud prosecution. At his rearraignment, McElhaney acknowledged that he was fully satisfied with the advice and representation his counsel provided. Even after McElhaney's guilty plea, Ethington asserts the same arguments that McElhaney requests be made. The court is profoundly aware of the reputation, skill, and competence of Messrs. Gibson and Ethington. Put simply, McElhaney hired two of the finest criminal defense attorneys in the Northern District of Texas. These attorneys, through vigorous advocacy, enabled McElhaney to receive the high quality representation he desired.

## IV.    Conclusion

For the reasons stated herein, the court determines that the totality of the circumstances do not establish a fair and just reason for allowing McElhaney to withdraw his guilty plea. Accordingly, the court **denies** McElhaney's Notice of Intention to Withdraw Plea of Guilty. For the reasons stated at the hearing, and to memorialize the actions taken, the court **denies** McElhaney's Motion to Dismiss Indictment and **grants** the Motion to Quash Subpoenas. A sentencing scheduling order will issue by separate document.

**It is so ordered** this 17th day of November, 2005.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge